UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-00075-TBR

WELLS FARGO FINANCIAL LEASING, INC.                           Plaintiff

v.

DAVID GRIFFIN *and*                                           Defendants
CHARLES JONES

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant David Griffin's Motion to Dismiss, (Docket No. 18), and Defendant Charles Jones' Motion for Judgment on the Pleadings, (Docket No. 19). Plaintiff Wells Fargo Financial Leasing, Inc. (Wells Fargo), has responded to both Motions. (Docket Nos. 23 & 24, respectively.) Griffin has replied, (Docket No. 29); Jones has not replied, and the time to do so has now passed. These matter are now ripe for adjudication. For the reasons that follow, Griffin's and Jones' respective Motions will each be GRANTED.

BACKGROUND

Plaintiff Wells Fargo brings this action alleging breach of contract against Defendants Griffin and Jones. (Docket No. 1.) Wells Fargo's claims are based on two "Master Lease Agreements" (the "Master Agreements") and the exhibits, schedules, and addenda attached thereto (with the Master Agreements, collectively referred to as the "Loan Documents"), whereby SE Book Company, LLC (SE Book), agreed to lease certain computer servers and software from VAR Resources, Inc. (VAR Resources).

(*See* Docket No. 1-1.) The Master Agreements were executed by Jones[1] on behalf of SE Book on July 19, 2011, and accepted by VAR Resources on August 31, 2011.[2] (Docket No. 1-1, at 2, 9.) On July 19, 2011, Jones executed a "Personal Guaranty" agreement (the "Guaranty"), and on July 20, 2011, Griffin executed an identical "Personal Guaranty" agreement (also referred to hereinafter as "Guaranty" or, collectively, the "Guaranties").

Then on December 29, 2011, VAR Resources assigned its interest in the Master Agreements to Wells Fargo pursuant to an assignment and bill of sale. SE Book failed to make payments due and owing under the lease when the monthly payments came due in October 2012 and thereby defaulted on the lease. Wells Fargo sent a demand letter to Griffin and Jones dated April 8, 2013, demanding payment pursuant to the Guaranties. (*See* Docket No. 1-4.) Wells Fargo then initiated this action on May 15, 2013. (*See* Docket No. 1.)

STANDARD

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) and motions for judgment on the pleadings under Rule 12(c) are adjudicated using the same standard. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577 (6th Cir. 2007); *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 389 (6th Cir. 2007). When considering either a Rule 12(b)(6) or 12(c) motion, the Court will presume that all the well-pleaded material allegations of the pleadings are true and will draw all reasonable

---

[1] Griffin is not a signatory on the Master Agreements or Loan Documents.

[2] The first Master Agreement was dated August 31, 2011, by VAR Resources' representative, but the second Master Agreement is undated relative to the date of VAR Resources' acceptance. (Docket No. 1-1, at 9.)

inferences in favor of the nonmoving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *JPMorgan*, 510 F.3d at 581. However, the Court need not accept as true legal conclusions or unwarranted factual inferences. *Total Benefits*, 552 F.3d at 434; *JPMorgan*, 510 F.3d at 581-82.

Under Rule 12(b)(6) motion to dismiss, a complaint may be attacked for failure "to state a claim upon which relief can be granted." "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Similarly, a Rule 12(c) motion for judgment on the pleadings may be granted only if the moving party is clearly entitled to judgment," *JPMorgan*, 510 F.3d at 581 (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)), and "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law," *id.* at 582 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

DISCUSSION

Defendant Griffin moves to dismiss under Rule 12(b)(6), (Docket No. 18), and Defendant Jones moves for judgment on the pleadings under Rule 12(c), (Docket No. 19). Though their respective Motions are framed slightly differently, the crux of both Defendants' arguments is that the Guaranty Agreements at issue are not enforceable under Kentucky law. Wells Fargo, in separate but almost identical Responses, argues that the enforceability of the Guaranties is governed by Texas law, not Kentucky law. (Docket Nos. 23; 24.) Wells Fargo maintains however that the Guaranties are enforceable under the law of either state. The Court will first resolve the procedural

issues concerning Jones' Rule 12(c) Motion before collectively analyzing the substantive issues common to both Defendants.

I. **Defendant Jones' Motion for Judgment on the Pleadings (Docket No. 19)**

Notwithstanding the fact that the pleadings have not yet closed and, thus, Jones' Rule 12(c) Motion is untimely, the Court will consider it as a motion to dismiss under Rule 12(b)(6). As a number of other district courts in this Circuit have noted, "the pleadings are not closed until all defendants have filed an answer, even when one defendant has filed a motion to dismiss instead of answering." *Nationwide Children's Hosp., Inc. v. D.W. Dickey & Son, Inc. Emp. Health & Welfare Plan*, 2009 WL 5247486, at *1 (S.D. Ohio Dec. 31, 2009) (citing, *e.g.*, *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005)); *see also Dunn-Mason v. JP Morgan Chase Bank Nat'l Ass'n*, 2013 WL 4084676, at *4 (E.D. Mich. Aug. 13, 2013); *Kowall v. GMAC Mortg., LLC*, 2012 WL 884851, at *1 (E.D. Mich. Mar. 15, 2012); *Horen v. Bd. of Educ. of Toledo Sch. Dist.*, 594 F. Supp. 2d 833, 840 (N.D. Ohio 2009). Further, when an answer includes a counterclaim and denominates it as such, Rule 7(a) requires an answer to that counterclaim.

Jones filed his "Answer to Complaint and Counterclaim" on July 12, 2013. (Docket No. 17.) Jones thereafter filed his Rule 12(c) Motion on July 26, 2013. (Docket No. 19.) As of July 26, Griffin had filed a Rule 12(b)(6) Motion to Dismiss but not an answer. On August 1, 2013, Wells Fargo filed its Rule 12(b)(6) Motion to Dismiss relative to Jones' Counterclaim. (Docket No. 22.) Then on August 22, Jones filed what appears to be an amended Answer and Counterclaim, (Docket No. 28), and, on September 5, Wells Fargo filed its Motion to Dismiss that amended Counterclaim,

(Docket No. 30). Thus, because Griffin has not filed an answer, not all Defendants have answered the Complaint. Additionally, Wells Fargo, the Counterclaim Defendant, has not answered either the original or amended Counterclaim filed by Jones. Thus, the pleadings in this matter are not "closed" for purposes of Rule 12(c).

The Court recognizes that courts maintain discretion in certain circumstances to consider a Rule 12(c) motion even where not all defendants have filed an answer. *See Dunn-Mason*, 2013 WL 4084676, at *4; *Nationwide Children's Hosp.*, 2009 WL 5247486, at *2. Because none of the limited circumstances to justify doing so are present here, the Court finds no reason to excuse the requirement that the pleadings be closed before a Rule 12(c) motion may be considered. Still, as noted above, the standard for a Rule 12(c) motion is the same as that for a motion to dismiss under Rule 12(b)(6). Wells Fargo acknowledges this point in their Response, and, accordingly, argues against Jones' Motion under the applicable standard. As such, the Court will consider Jones' Motion as one under Rule 12(b)(b). *Cf. Wagner v. Higgins*, 754 F.2d 186, 187-88 (6th Cir. 1985) (affirming district court's treatment of a motion styled under Rule 12(b)(6), which would have been untimely, as one seeking judgment on the pleadings under Rule 12(c), given that "the substance of the motion is plain" and "[n]o surprise or other prejudice to the plaintiff was claimed").

II.     **Choice of Law**

Wells Fargo insists that Texas law governs because of the choice-of-law provision contained in the Master Agreements. That clause states, in pertinent part:

> APPLICABLE LAW; VENUE; JURISDICTION. The parties agree that this Master Agreement, each Schedule and Other Document shall be treated as though executed and performed in

> Dallas County, Texas, and any legal actions relating to the Agreement, any Schedule or any Other Document must be instituted in the courts of Dallas County, Texas or the United States District Court for the Northern District of Texas, which shall have exclusive jurisdiction.

(Docket No. 1-1, at 3, 10.) The Court need only conduct a choice-of-law analysis if a conflict exists between two states' laws. *Asher v. Unarco Material Handling, Inc.*, 737 F. Supp. 2d 662, 667-68 (E.D. Ky. 2010) (citing *Williams v. Toys "R" Us*, 138 F. App'x 798, 803 (6th Cir. 2005)). At issue here is whether Kentucky law and Texas law conflict relative to the enforceability of guaranty agreements.

Kentucky Revised Statute § 371.065(1) sets forth Kentucky's statutory requirements for a valid, enforceable guaranty as follows:

> No guaranty of an indebtedness which either is not written on, or does not expressly refer to, the instrument or instruments being guaranteed shall be valid or enforceable unless it is in writing signed by the guarantor and contains provisions specifying the amount of the maximum aggregate liability of the guarantor thereunder, and the date on which the guaranty terminates. . . .

Or, as recently summarized by the Sixth Circuit: "The statute provides three ways a guaranty can be enforceable: (1) if it is written on the instrument it guarantees; (2) if it expressly refers to the instrument it guarantees; (3) if it is in writing, signed by the guarantor, and specifies his aggregate liability [and the date on which the guaranty terminates]." *Alliant Tax Credit Fund 31-A, Ltd. v. Murphy*, 494 F. App'x 561, 569 (6th Cir. 2012). If any one of the three prongs is met, the statute is satisfied and the guaranty is valid and enforceable. *Wheeler & Clevenger Oil Co., Inc. v. Washburn*, 127 S.W.3d 609, 614-15 (Ky. 2004).

Under Texas Law, "[a] guaranty contract exists if the agreement reflects '(1) the parties involved, (2) a manifestation of intent to guaranty the obligation, and (3) a description of the obligation being guaranteed.'" *S&A Restaurant Corp. v. Lane*, 2007 WL 4403304, at *3 (N.D. Tex. 2007) (quoting *Park Creek Assocs., Ltd. v. Walker*, 754 S.W.2d 426, 429 (Tex. App. 1988)). "To recover under a guaranty, a claimant must prove (1) the existence and ownership of the guaranty agreement, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the guarantor's failure or refusal to perform the promise." *Anderton v. Cawley*, 378 S.W.3d 38, at 46 (Tex. App. 2012) (citing *Marshall v. Ford Motor Co.*, 878 S.W.2d 629, 631 (Tex. App. 1994)); *see also* Robin Russell, Tex. Prac. Guide § 9:74 (2012).

It appears to the Court that a conflict exists between Kentucky and Texas relative to the requirements for creating a valid, enforceable guaranty. Accordingly, the Court will proceed to analyze which law is applicable to this dispute.

Federal courts hearing cases based on diversity must determine which state's law to apply to the case. This begins with an analysis of the choice-of-law rules of the forum state, Kentucky.[3] *E.g.*, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, (1941); *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000). In Kentucky, the applicable choice-of-law rule depends upon the classification of a claim as either sounding in tort or in contract. This distinction is important because Kentucky

---

[3] Despite arguing that Texas law should apply, Wells Fargo does not discuss the applicable choice-of-law rules of this forum. (*See* Docket Nos. 23, at 2-4; 24, at 3-4.)

courts utilize separate tests for cases arising in tort and cases arising in contract. *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009).

The Court notes at the outset that Kentucky courts "are very egocentric or protective concerning choice of law questions." *Paine v. La Quinta Motor Inns, Inc.*, 736 S.W.2d 355, 357 (Ky. Ct. App. 1987), *overruled on other grounds by Oliver v. Shultz*, 885 S.W.2d 699 (Ky. 1994)—that is, there is a strong preference in Kentucky for applying Kentucky law. This "provincial tendency" has been recognized routinely by the Sixth Circuit when applying Kentucky's choice-of-law rules. *See, e.g.*, *Wallace Hardware*, 223 F.3d at 391 ("On at least two occasions, we likewise have noted this provincial tendency in Kentucky choice-of-law rules."); *Adam v. J.B. Hunt Transp., Inc.*, 130 F.3d 219, 230 (6th Cir. 1997) (noting that "Kentucky does take the position that when a Kentucky court has jurisdiction over the parties, '[the court's] primary responsibility is to follow its own substantive law.'" (alteration in original) (quoting *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972))); *Johnson v. S.O.S. Transp., Inc.*, 926 F.2d 516, 519 n.6 (6th Cir. 1991) ("Kentucky's conflict of law rules favor the application of its own law whenever it can be justified."); *Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1983) ("Kentucky courts have apparently applied Kentucky substantive law *whenever possible*. . . . [I]t is apparent that Kentucky applies its own law unless there are overwhelming interests to the contrary." (emphasis in original) (discussing *Breeding v. Mass. Indem. & Life Ins. Co.*, 633 S.W.2d 717 (Ky. 1982))).

Where a choice-of-law issue arises in a contract dispute, such as in the present case, the Kentucky Supreme Court twice recently affirmed the applicability of the "most

significant relationship" test articulated in § 188 of the Restatement (Second) of Conflict of Laws (1971).[4] *Schnuerle v. Insight Commc'ns Co.*, 376 S.W.3d 561, 566-67 (Ky. 2012); *Saleba*, 300 S.W.3d at 181. Prior to the Kentucky Court's 2012 decision in *Schnuerle v. Insight Communications Co.*, the Sixth Circuit had predicted that Kentucky courts would apply § 187 of the Restatement[5] where a contractual choice-of-law clause was present. *Wallace Hardware*, 223 F.3d at 397-98. In a detailed decision, the Sixth

---

[4] Section 188 of the Restatement, which is titled "Law Governing in Absence of Effective Choice by the Parties," states, in relevant part:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties . . . .
>
> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account . . . to determine the law applicable to an issue include:
>
> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

[5] Section 187 of the Restatement, which is titled "Law of the State Chosen by the Parties," states, in relevant part:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Circuit, in *Wallace Hardware*, found error in the district court's application of § 188's most-significant-relationship test where there was a choice-of-law clause in the contract underlying the parties' dispute. *Id.* at 393. After discussing the Kentucky Supreme Court's 1982 decision in *Breeding v. Massachusetts Indemnity & Life Insurance Co.* (the decision in which the Kentucky Court adopted § 188's most-significant-relationship test), the Sixth Circuit remarked:

> Notably, the *Breeding* Court did not apply, nor even mention, § 187 of the Restatement, which specifically addresses contractual choice-of-law provisions. At a minimum, then, *Breeding* indicates that the Kentucky courts will not automatically honor a choice-of-law provision, to the exclusion of all other considerations. Rather, despite a choice-of-law clause in the accidental death policy, the *Breeding* Court weighed the relative interests of Kentucky and Delaware in deciding which law to apply. Further, in making this determination, the Court gave virtually no weight to the choice-of-law provision.

*Id.* at 393. However, the Sixth Circuit went on to reason, "[W]e do not believe that *Breeding* can be construed as broadly precluding parties from making a reasonable and binding choice as to the law that will govern their contractual relationship." *Id.* Thus, despite "not[ing] the tendency of Kentucky courts to apply their own law, even when a contractual provision might state otherwise," the Sixth Circuit ultimately predicted that Kentucky would apply § 187 rather than § 188 when faced with a contractual choice-of-law provision:

> In short, we find no clear signposts in the prior decisional law. Nevertheless, we conclude that, in a standard commercial breach-of-contract case such as we have here, the Kentucky courts would choose to adopt § 187 of the Restatement as their analytical framework for addressing a contractual choice-of-law clause. Initially, we note that *Breeding* itself lends considerable support to this conclusion. While the Kentucky Supreme Court

> did not cite § 187 in that decision . . . we view *Breeding* as employing a § 187 analysis, albeit only implicitly.
>
> . . . .
>
> . . . We see no basis for concluding that § 187 is somehow disfavored by the courts of that state; rather, the more logical conclusion to be drawn from the case law is that the proper occasion has not yet arisen for adopting that provision. Simply stated, we believe we are confronted with such circumstances here. Thus, while we acknowledge that we are writing on something of a blank slate, we find that § 187 of the Restatement sets forth the appropriate standards for determining whether to enforce the [instant contractual choice-of-law-provision].

*Id.* at 397-98.

Recent decisions by Kentucky's highest court have shown this prediction to be mistaken and, instead, have affirmed the application of § 188's most-significant-relationship test, even where the parties have expressly agreed to have their contractual rights and duties governed by a particular state's laws. In its 2009 decision in *Saleba v. Schrand*, the Kentucky Supreme Court made no distinction between contractual disputes where the underlying contract contained an explicit choice-of-law clause and those that did not, stating: "First and foremost, Kentucky has consistently applied § 188 of the Restatement (Second) of Conflict of Laws to resolve choice of law issues that arise in *contract* disputes." 300 S.W.3d at 181 (emphasis in original). But there was no express choice-of-law provision at issue in *Saleba*, and the Kentucky Court ultimately found that the underlying dispute (which dealt with the discoverability of allegedly privileged communications) was neither a tort nor a contract issue. *Id.* However, the Kentucky Supreme Court's subsequent 2012 decision in *Schnuerle* makes clear Kentucky's position as to which analytic framework—§ 187 or § 188—is appropriate in instances where the underlying contract contains a choice-of-law provision.

*Schnuerle* dealt with a service agreement that contained an arbitration clause that contained an express choice-of-law provision designating that the law of New York would apply to the construction, interpretation, and enforcement of that agreement. 376 S.W.3d at 566. Relying on *Breeding*, the Jefferson Circuit Court declined to apply the choice-of-law provision and, instead, applied Kentucky law to determine whether the arbitration clause was enforceable. The Kentucky Court of Appeals, without specifically addressing the choice-of-law issue, also applied Kentucky law, thereby implicitly affirming the circuit court on that point. On discretionary review, the Kentucky Supreme Court affirmed the circuit court's reliance on *Breeding* and its application of § 188's most-significant-relationship test: "The *Breeding* decision held that Kentucky law should apply because Kentucky had the greater interest in, and the most significant relationship to, the transaction and the parties. Upon application of *Breeding,* we agree with the circuit court's conclusion that Kentucky law governs our evaluation of the Service Agreement." *Id.* at 566-67. Then, after applying several of the factors outlined in § 188(2), the Kentucky Court concluded that "there can be no doubt that Kentucky has 'the greater interest and the most significant relationship to the transaction and the parties.'" *Id.* at 567. The Kentucky Court made no mention of § 187, and, instead, focused its entire discussion on relative interests of Kentucky and New York, apparently affording no weight whatsoever to the parties' contractual choice-of-law provision. *See id.*

Therefore, while the Court understands the Sixth Circuit's logic in predicting that Kentucky courts would adopt § 187, in light of these recent decisions by Kentucky's highest court, the Court will decline to follow that prediction and, in

accordance with *Schnuerle*, instead apply § 188's most-significant-relationship test to determine whether Kentucky or Texas law should govern the enforceability of the Guaranties in this case.[6]

Under the framework of § 188, the Court must determine which state has the most significant relationship to the transaction and the parties under the principles stated in § 6 and the contacts outlined in § 188(2). The § 188(2) factors to be considered are: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation, and place of business of the parties. Underlying the factors in § 188(2) are the principles enumerated in § 6(2), which include: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. When using this framework, the Court "must balance principles, policies, factors, weights, and emphases to reach a result, the derivation of which, in all honesty, does not proceed with mathematical precision." *Int'l Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 606 (6th Cir. 1996). In this sense, the Sixth Circuit has noted that "even when sections 6 and 188 are read together, it is clear they only provide a broad general framework for the resolution of choice of law issues in the context of a contract dispute." *Id.* The "key" to the Court's analysis, the Sixth

---

[6] This Court, relying on *Schnuerle*, followed the same approach in *Sierra v. Williamson*, 2013 WL 3456988, at *2-4 (W.D. Ky. July 9, 2013).

Circuit advises, "is that the choice of law principles found in the Restatement need not be given equal weight in every circumstance, nor are they intended to be exclusive. They also are relatively elastic, and in some cases equivocal." *Id.*

Kentucky has the most significant relationship to the parties and transactions here. According to its Complaint, Wells Fargo's principal place of business is Des Moines, Iowa. (Docket No. 1, at 1.) Jones is a resident of Murray, Kentucky, and Griffin is a resident of Nashville, Tennessee. (Docket No. 1, at 1.) The Lease Documents underlying the Guaranties at issue reflect that the lessee, SE Book Company, has its "Chief Executive Office" in Murray, Kentucky, and that the equipment to be leased would be located in Murray, Kentucky. (Docket No. 1-1, at 2, 4, 6, 11.) Furthermore, Wells Fargo avers in its Complaint that "[v]enue is proper in this Court . . . because the underlying business transactions giving rise to the claim occurred in this District." (Docket No. 1, at 2.)

Texas, on the other hand, has little if any interest in this action. While the Master Agreements were entered into with VAR Resources, a Texas company, VAR Resources is not a party to this action, nor has it ever been. In fact, VAR Resources assigned its interest in the Lease Documents to Wells Fargo in December 2011, some 18 months before the filing of this action and nearly one year before SE Book defaulted on its payment obligations. Thus, to the extent Texas has any relationship to the transaction and parties here, that relationship clearly does not amount to Texas having the most significant relationship.

The remaining Restatement factors do not weigh heavily in determining the relative interests between Kentucky and Texas because they are either inapplicable or

indeterminate here.  Kentucky has the most significant relationship to this dispute, and Texas's comparative interest is not sufficient to displace the presumption of applying Kentucky law.  Accordingly, the Court finds that Kentucky law should apply.

Finally, consideration of the purported choice-of-law clause in the Master Agreements does not alter the conclusion that Kentucky law should apply.  For one, it is questionable whether that clause expressly designates Texas law as governing the parties' contractual rights and duties.  Nowhere does that provision state that "Texas law shall apply" or that "Texas law shall govern any dispute arising under the contract."  Rather, the clause Wells Fargo characterizes as reflecting the parties' choice of law seems to address itself primarily to *venue*, rather than *choice of law*.  Thus, even assuming § 187 of the Restatement was applicable, the purported choice-of-law clause would likely not be enforceable as an "explicit provision" within the meaning of § 187, and Kentucky law would still apply.

## III.     Enforceability of the Guaranties under Ky. Rev. Stat. § 371.065(1)

Whether the Guaranties are enforceable is a question of law to be resolved by the Court.  *E.g.*, *Dowell v. Safe Auto Ins. Co.*, 208 S.W.3d 872, 875 (Ky. 2006) ("It is well established that construction and interpretation of a written instrument are questions of law for the courts." (quoting *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. Ct. App. 1998))).  As noted above, Ky. Rev. Stat. § 371.065(1) "provides three ways a guaranty can be enforceable: (1) if it is written on the instrument it guarantees; (2) if it expressly refers to the instrument it guarantees; (3) if it is in writing, signed by the guarantor, and specifies his aggregate liability [and the date on which the guaranty terminates]."  *Alliant Tax Credit Fund 31-A*, 494 F. App'x at 569.  If any one of the

three prongs is met, the statute is satisfied and the guaranty is valid and enforceable. *Wheeler*, 127 S.W.3d at 614-15.

In the present case, there seems to be no dispute that the Guaranties are not written on the instruments they purportedly guarantee. Nor is there any dispute that the Guaranties do not specify the maximum aggregate liability or the date on which the guaranty terminates. At issue here is the second possible avenue of enforcement: whether the Guaranties "expressly refer to the instrument or instruments being guaranteed." Upon reviewing the relevant case law interpreting this requirement, the Court finds that the Guaranties do not and, as such, are not enforceable under Kentucky law.

In a pair of recent decisions, the Kentucky Court of Appeals provided useful guidance as to the "express reference" prong of Ky. Rev. Stat. § 371.065(1). First, in *Smith v. Bethlehem Sand & Gravel Co.*, the court found that the guaranty agreement in question was enforceable because it expressly referenced the instrument it guaranteed. 342 S.W.3d 288 (Ky. Ct. App. 2011). There, a $500,000 promissory note was executed between two sand and gravel companies, Bethlehem and Brooks. Mr. Smith, Brooks' principal, executed a guaranty with Bethlehem guaranteeing that note. The court began by noting that "the language of the guaranty agreement itself . . . refers to and purports to guarantee a $500,000 term note from Brooks to Bethlehem." *Id.* at 291. The court also considered and relied on a document entitled "Schedule 1," "which the guaranty agreement itself referenced in three places and recited was 'attached to and made part of this Guaranty Agreement.'" Schedule 1 described the obligations in the guaranty agreement and "explicitly refer[ed] to the instrument under that agreement: 'Promissory

Note dated as of September 15, 2005, made by Borrower to the order of Lender in face principal amount of $500,000.00 and maturing on September 15, 2010." *Id.* at 291-92. Upon finding that Schedule 1 "is effectively a part of the guaranty agreement," and that "the guaranty agreement does reference the $500,000 promissory note and [Mr. Smith's] obligations under that note," the court of appeals concluded that the guaranty in question effectively referenced the instrument it guaranteed, thus satisfying § 371.065(1)'s express-reference provision.

By contrast, in *Brunswick Bowling & Billiards v. Ng-Cadlaon*, the Kentucky Court of Appeals found the guaranty in question unenforceable because it did not expressly refer to the agreement it purportedly guaranteed. 2011 WL 5244971 (Ky. Ct. App. Nov. 4, 2011.) There, Ms. Ng-Cadlaon, who was a shareholder of R&S Enterprises, executed a personal guaranty as security for a note executed by R&S. That guaranty contained the language: "including but not limited to conditional sales agreements, leases, chattel and/or real estate mortgages, notes or other deferred or time payment paper, and any and all agreements relating to the purchase of such paper or documents (all of the foregoing hereinafter called 'Security Obligations')." *Id.* at *1-2. The court of appeals concluded that this language did not constitute an express reference to the note executed by R&S, reasoning: "The fact that the note at issue falls within one of the categories of obligations listed in the guaranty is insufficient in itself to constitute an express reference. . . . [T]he guaranty signed by Ng-Cadlaon was not attached to the note, did not expressly refer to that specific note, nor did it make reference to any particular sections of the note." *Id.* at *2.

Recent decisions by this Court and by the Sixth Circuit add further contour to what constitutes an express reference. In *Banterra Bank v. Hendrick*, this Court found language in a guaranty sufficient to satisfy § 371.065(1). 2011 WL 832455 (W.D. Ky. Mar. 3, 2011). There, the guaranty stated in general terms that the "Guarantor . . . . guarantees full and punctual payment and satisfaction of the indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and Related Documents." *Id.* at *9. The guaranty also included a "Definitions" section identifying the "Borrower" and "Lender" and defining the terms "Note" and "Related Documents." Specifically, "Note" was defined as "The promissory note from Borrower to Lender, bearing the same dates as this mortgage . . . ." *Id.* The final paragraph concluded with the statement "THIS GUARANTY IS DATED OCTOBER 30, 2006," and the promissory note in question was dated "10-30-2006." *Id.* Finding that this language was sufficiently descriptive to satisfy the express reference requirement of § 371.065(1), this Court concluded that the guaranty agreement was enforceable. *Id.* at *9-10.

In *Alliant Tax Credit Fund 31-A, Ltd. v. Murphy*, the Sixth Circuit, applying Ky. Rev. Stat. § 371.065(1), found a similar basis to conclude that a guaranty expressly referred to the instrument it guaranteed. 494 F. App'x at 568-69. The guaranty there stated that it "guarantee[d] . . . obligations of the General Partner under the Agreement," The guaranty defined the term "Agreement" to mean the "Amended and Restated Agreement of Limited Partnership dated as of December 8, 2003," and the guaranty also contained language referring to specific contractual provisions in that Agreement.

Accordingly, the Sixth Circuit was satisfied that the express-reference provision of § 371.065(1) had been met and held that the guaranty was enforceable. *Id.*

In the present case, each of the identical Guaranties at issue is comprised, in its entirety, of a single, four-sentence paragraph that states, in relevant part:

> I guarantee that the Lessee/Customer will make all payments and pay all other charges required under the lease/rental agreement when they are due and will absolutely and unconditionally perform all other obligations under the lease/rental agreement fully and promptly.

(Docket No. 1-2, at 2, 3.) Based on a review of the relevant case law, the Court finds that this language does not satisfy § 371.065(1)'s express-reference provision. The Guaranties do not identify or define the term "Lessee/Customer," and that term does not appear anywhere in the Master Agreements. The Guaranties' only reference to the instrument purportedly guaranteed is to the "lease/rental agreement," but that term is not defined and there is no further description of what lease/rental agreement the Guaranties refer to. The Guaranties make no reference to, or mention of, the parties to that lease/rental agreement, nor is there any reference to the date of that lease/rental agreement, its terms or provisions, or any other information to give any specificity to what lease/rental agreement the Guaranties purport to guarantee. Moreover, each Master Agreements, in its very first line, identifies itself using the term "Master Agreement" not "lease/rental agreement." The Master Agreements do not themselves mention, reference, or otherwise incorporate any separate guaranty agreement. The facts that Jones' Guaranty was executed on the same day as the Master Agreements, and that Griffin's Guaranty was executed the following day, at best support the inference that the Guaranties were intended to guarantee SE Book's obligations under the Master

Agreements; however, such an inference is insufficient to satisfy § 371.065(1)'s requirement that a guaranty *expressly* refer to the instrument being guaranteed.

## CONCLUSION

For the foregoing reasons, the Court finds that the Guaranties executed by Defendants Jones and Griffin are not enforceable under Kentucky law; therefore, as a matter of law, Jones and Griffin are entitled to dismissal of Wells Fargo's breach-of-contract claims against them. Having considered Defendants' Motions and being otherwise sufficiently advised;

IT IS HEREBY ORDERED as follows:

(1) Defendant David Griffin's Motion to Dismiss, (Docket No. 18), is GRANTED, and Wells Fargo's claim against him is DISMISSED;

(2) Defendant Charles Jones' Motion for Judgment on the Pleadings, (Docket No. 19), which the Court has treated as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), also is GRANTED, and Wells Fargo's claim against Jones is DISMISSED;

IT IS SO ORDERED.

Date:


cc: Counsel