UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

CIVIL ACTION NO. 5:13-CV-00075-M

WELLS FARGO FINANCIAL LEASING, INC.,                                           PLAINTIFF

V.

DAVID GRIFFIN                                                                   DEFENDANT

And

CHARLES A. JONES                                                   DEFENDANT/
                                                                                                           COUNTERCLAIM PLAINTIFF

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion to Intervene by C.A. Jones Management Group, LLC [DN 36] and the Motion to Intervene by The Murray Bank [DN 44]. Also before the Court is Wells Fargo Financial Leasing, Inc.'s Motion to Dismiss the Amended Counterclaim of Defendant Charles Jones [DN 30]. Fully briefed, this matter is ripe for decision.

### I. BACKGROUND

On July 19, 2011, SE Book Company, LLC and VAR Resources, Inc. ("VAR") entered into two Master Lease Agreements. In these Master Lease Agreements, SE Book Company, LLC agreed to lease certain computer servers and software from VAR. (Compl. [DN 1] ¶ 6.) In order to secure SE Book Company, LLC's obligation to VAR, David Griffin ("Griffin") and Charles A. Jones ("Jones") executed Personal Guaranty Agreements on July 20, 2011 and July 19, 2011, respectively. (Id. ¶ 7.) Later, on December 29, 2011, VAR assigned its interest in both the Master Lease Agreements and the Personal Guaranty Agreements to Wells Fargo Financial Leasing, Inc. ("Wells Fargo"). As a result, Wells Fargo became entitled to enforce VAR's rights under both the Master Lease Agreements and the Personal Guaranty Agreements. (Id. ¶¶ 8-9.)

1

In October of 2012, SE Book Company, LLC defaulted on its obligation under the Master Lease Agreements. (Id. ¶ 10.) Wells Fargo notified Griffin and Jones of this default, giving them an opportunity to satisfy their obligation under the Personal Guaranty Agreements. (See id. ¶ 12.) When Griffin and Jones failed to pay, Wells Fargo filed this breach of contract action against them, seeking to enforce the Personal Guaranty Agreements. (Id. ¶¶ 12-14.)

In response to Wells Fargo's complaint, Jones filed an answer and counterclaim. (Ans. to Compl. & Countercl. [DN 17].)[1] In his counterclaim, Jones alleged that Wells Fargo, with the aid of one or more bankruptcy trustees, wrongfully took possession of certain equipment owned CA Jones Management Group, LLC ("CAJM"), a limited liability company of which Jones is the sole member. According to Jones, the CAJM equipment was not part of the equipment leased in the Master Lease Agreements. Instead, the CAJM equipment was subject to a properly recorded lien of The Murray Bank. Jones alleged that Wells Fargo "converted the CAJM Equipment to its own property and improperly sold it for substantially less than its fair market value." (Id. ¶ 2.)

On August 1, 2013, Wells Fargo moved to dismiss the counterclaim for lack of standing and for failure to state a claim upon which relief can be granted. In its motion, Wells Fargo argued that Jones was improperly asserting a claim on behalf of CAJM and The Murray Bank, neither of which were parties to the lawsuit. (Mot. to Dismiss Countercl. of Def. Charles Jones [DN 22].) Instead of filing a response, Jones filed an amended counterclaim, alleging that Wells Fargo tortiously interfered with his relationship with The Murray Bank by improperly selling the CAJM equipment. (See Ans. to Compl. & Countercl. [DN 28].) Wells Fargo has now moved to dismiss Jones' amended counterclaim. In addition, CAJM and The Murray Bank have moved to intervene in this action as counterclaim plaintiffs. The Court will consider these motions below.

---

[1] The Court notes that Griffin and Jones moved for judgment on the pleadings and for dismissal of Wells Fargo's complaint. The Court granted these motions on September 6, 2013. (See Mem. Op. & Order [DN 31].) As such, Jones' counterclaim is the only remaining claim in this action.

2

## II. MOTIONS TO INTERVENE BY C.A. JONES MANAGEMENT GROUP, LLC [DN 36] AND THE MURRAY BANK [DN 44]

CAJM and The Murray Bank have each moved to intervene as of right as counterclaim plaintiffs in this action. Under Fed. R. Civ. P. 24(a)(2), a non-party may intervene in an action as of right when it "claims an interest relating to the property that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). A motion to intervene "must state the grounds for intervention and must be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). The Sixth Circuit has held that a proposed intervenor must satisfy four factors before being allowed to intervene: "(1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest." Coal. to Defend Affirmative Action v. Granholm, 501 F.3d 775, 779 (6th Cir. 2007) (citing Grutter v. Bollinger, 188 F.3d 394, 397-98 (6th Cir. 1999)). The Sixth Circuit has held that Rule 24 should be "broadly construed in favor of potential intervenors." Id.

In the present case, CAJM seeks intervention because the amended counterclaim involves equipment which is owned by CAJM. (See Mem. in Supp. of Mot. to Intervene by C.A. Jones Mgmt. Grp. ("CAJM's Mem.") [DN 36-1] 2.) By contrast, The Murray Bank seeks intervention because the amended counterclaim involves equipment which secures a loan from The Murray Bank to CAJM. (See Mem. in Supp. of Mot. to Intervene by The Murray Bank ("Murray Bank's Mem.") [DN 44-1] 2.) For the following reasons, the motions to intervene [DNs 36, 44] are **GRANTED**. CAJM and The Murray Bank are permitted to assert the claims in their pleadings.

**Timeliness of Motion.** Both CAJM and The Murray Bank argue that they have satisfied the first factor for intervention as of right under Fed. R. Civ. P. 24(a)(2), as their motions are timely. (See CAJM's Mem. [DN 36-1] 3; Murray Bank's Mem. [DN 44-1] 3.) The Court agrees. As noted by CAJM and The Murray Bank, discovery has yet to commence and the case remains in its infancy. Wells Fargo does not dispute these facts in its responsive briefs.

**Substantial Legal Interest in the Subject Matter of the Case.** CAJM and The Murray Bank next argue that they have satisfied the second factor for intervention as of right under Fed. R. Civ. P. 24(a)(2), as they have substantial legal interests in the subject matter of the case. According to CAJM, there can be no dispute that it has a substantial interest in the subject matter of the case because it owns the equipment that is at the heart of Jones' amended counterclaim. (CAJM's Mem. [DN 36-1] 3.) According to The Murray Bank, there can be no dispute that it has a substantial interest in the subject matter of the case because it has a valid security interest in that same equipment. (Murray Bank's Mem. [DN 44-1] 3.) In support, both CAJM and The Murray Bank note that the Sixth Circuit employs an "expansive notion" of what qualifies as a substantial interest. See Coal. to Defend Affirmative Action, 501 F.3d at 780 (quotation omitted).

Wells Fargo counters that CAJM and The Murray Bank have failed to show that they have substantial legal interests in the present litigation. As to CAJM, Wells Fargo argues that it "fails to offer any evidence beyond a bare allegation that it has an actual ownership interest in the equipment that was allegedly converted." (Resp. in Opp. to CAJM's Mot. [DN 40] 5.) Similarly, as to The Murray Bank, Wells Fargo argues that it "fails to offer any evidence beyond a bare allegation that it has a security interest in the equipment that was allegedly converted." (Resp. in Opp. to Murray Bank's Mot. [DN 46] 5.) In essence, Wells Fargo argues that without identifying the property, providing an alleged value of the property, or offering an explanation of the nature

4

of their alleged ownership interests, neither CAJM nor The Murray Bank can demonstrate that they have a substantial legal interest in this proceeding. (See Resp. in Opp. to CAJM's Mot. [DN 40] 5; Resp. in Opp. to Murray Bank's Mot. [DN 46] 5-6.)

The Court, however, agrees with CAJM and The Murray Bank. In this case, it has been alleged that Wells Fargo took possession of certain equipment that belonged to CAJM and was subject to a security interest of The Murray Bank. (See Ans. to Compl. & Countercl. [DN 28] ¶¶ 4-5.) These allegations are sufficient to put Wells Fargo on notice of the property at issue (i.e. the equipment Wells Fargo allegedly possessed that was owned by CAJM and subject to The Murray Bank's security interest). Wells Fargo's argument that CAJM and The Murray Bank have not sufficiently identified the property at issue, provided an alleged value of the property, or explained the nature of its interest in the property is without merit. It cannot be doubted that CAJM, as the owner of the equipment, and The Murray Bank, as a secured creditor of the equipment, have substantial legal interests in the subject matter of this action.

**Impairment of Ability to Protect Interest in the Absence of Intervention.** CAJM and The Murray Bank next argue that they have satisfied the third factor for intervention as of right under Fed. R. Civ. P. 24(a)(2), as Jones cannot adequately protect their interests in this litigation and their interests may be impaired unless they are allowed to intervene. In cases where proposed intervenors seek the same ultimate objective as a party to the suit, the intervenors must overcome a presumption of adequate representation. United States v. Michigan, 424 F.3d 438, 433-44 (6th Cir. 2005). In this case, CAJM and The Murray Bank recognize that their interests are not adverse to Jones' interest. (CAJM's Mem. [DN 36-1] 4; Murray Bank's Mem. [DN 44-1] 4.) However, CAJM and The Murray Bank argue that they overcome a presumption of adequate representation because they intend to assert a conversion claim against Wells Fargo—and Jones, through his

5

personal guarantee of the loans on the equipment in question, cannot maintain such a claim. (See CAJM's Mem. [DN 36-1] 4; Murray Bank's Mem. [DN 44-1] 4.) In addition, CAJM states that Jones cannot adequately represent its interest because it may claim damages exceeding those of Jones as an individual. See Purnell v. City of Akron, 925 F.2d 941, 950 (6th Cir. 1991) (considering that the damages would be different for different parties and the parties would be in competition for limited funds in deciding whether to permit intervention).

Wells Fargo counters that CAJM and The Murray Bank cannot overcome a presumption of adequate representation because Jones shares the same ultimate objective with CAJM and The Murray Bank. (See Resp. in Opp. to CAJM's Mot. [DN 40] 3-4; Resp. in Opp. to Murray Bank's Mot. [DN 46] 4.) As for CAJM, Wells Fargo notes that CAJM and Jones are represented by the same attorney, raise identical claims, and use identical arguments to support those claims. In addition, Wells Fargo states that any recovery to Jones alone would benefit CAJM to the same degree as if CAJM was a party. (Resp. in Opp. to CAJM's Mot. [DN 40] 4.) As for The Murray Bank, Wells Fargo argues that The Murray Bank cannot meaningfully differentiate its concerns from those of Jones, as "if Murray Bank does indeed have a security interest in any property that was allegedly converted, any recovery by Jones stemming from such property would likely be subject to such a security interest." (Resp. in Opp. to Murray Bank's Mot. [DN 46] 6.)

The Court agrees with CAJM and The Murray Bank. As discussed below, the Court does not believe that Jones is the correct party to assert claims against Wells Fargo. The Court also does not believe that Jones has properly alleged a tortious interference with prospective advantage claim. This is true even though he personally guaranteed the loans that were used to purchase the CAJM equipment. As such, the Court finds that the interests of CAJM and The Murray Bank could not be adequately represented by Jones. The rights of CAJM and The Murray Bank may be impaired unless they are allowed to intervene.

**Parties before the Court cannot Adequately Protect Interest.** Finally, CAJM and The Murray Bank argue that they have satisfied the fourth factor for intervention as of right under Fed. R. Civ. P. 24(a)(2), as Jones cannot adequately protect their interests. As implied in the above discussion, the Court agrees with CAJM and The Murray Bank. Therefore, CAJM's motion to intervene [DN 36] and The Murray Bank's motion to intervene [DN 44] are **GRANTED**.

The Court notes that CAJM and The Murray Bank argue that even if the Court decides that they are not entitled to intervene under Fed. R. Civ. P. 24(a)(2), it should nevertheless permit them to intervene permissively. Under Fed. R. Civ. P. 24(b)(1)(B), a district court may permit an interested party to intervene when it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Sixth Circuit has held that when considering a motion for permissive intervention, a court should weigh the following: the timeliness of the motion, whether there is at least one common question of law or fact, whether there would be undue delay, any prejudice to the original parties, and any other relevant factors identified by the parties. Stupak-Thrall v. Glickman, 226 F.3d 467, 472 (6th Cir. 2000).

After weighing these factors, the Court finds that permissive intervention is also proper. CAJM's motion and The Murray Bank's motion are timely, as no discovery has been taken and no proceedings have been scheduled. There is also a common question of fact, as the equipment at issue is at the center of Jones' counterclaim. Indeed, CAJM and The Murray Bank have a conversion claim that shares with the main action a common question of whether Wells Fargo wrongfully took property that was owned by CAJM and subject to The Murray Bank's security interest. Finally, the intervention of CAJM and The Murray Bank will not delay or prejudice the adjudication of the rights of any parties to the lawsuit. Permissive intervention is proper.

The Court notes that Wells Fargo argues that it should not allow permissive intervention because the balance of the risk of undue delay, prejudice to the parties, and other relevant factors

tips in Wells Fargo's favor. In this respect, Wells Fargo cites Stupak-Thrall, 226 F.3d at 472, in which the Sixth Circuit denied permissive intervention because, among other reasons, the proposed intervenor's arguments were identical to the ones already before the court and the proposed intervenor could not "meaningfully differentiate their concerns from those of the [existing] defendants . . . . " Id. Here, Wells Fargo states that CAJM and The Murray Bank cannot meaningfully differentiate their concerns from those of Jones. Wells Fargo also argues that allowing CAJM and The Murray Bank to permissively intervene would cause undue delay because CAJM and The Murray Bank would raise identical arguments that would necessitate unnecessarily, duplicative responsive action by Wells Fargo. (See Resp. in Opp. to CAJM's Mot. [DN 40] 6; Resp. in Opp. to Murray Bank's Mot. [DN 46] 6-7.)

But the Court disagrees with Wells Fargo's arguments. CAJM and The Murray Bank can meaningfully differentiate their concerns from those of Jones, as they are bringing a conversion claim. Even though there is a barrier to intervention, "proposed intervenors need only show that there is a *potential* for inadequate representation." Stupak-Thrall, 226 F.3d at 472 (quotation omitted). That potential is present here. Also, the Court believes that Wells Fargo cannot claim prejudice simply because it will be required to respond to an additional party. Indeed, permissive intervention would also be appropriate under Fed. R. Civ. P. 24(b)(1). Again, CAJM's motion to intervene [DN 36] and The Murray Bank's motion to intervene [DN 44] are **GRANTED**.

### III. WELLS FARGO'S MOTION TO DISMISS THE AMENDED COUNTERCLAIM OF DEFENDANT CHARLES JONES [DN 30]

In addition to the motions to intervene of CAJM and The Murray Bank, this matter is before the Court on Wells Fargo's motion to dismiss Jones' amended counterclaim under Fed. R. Civ. P. 12(b)(6). Upon a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff[]," League of United Latin Am. Citizens v.

Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), accepting all of the plaintiff's allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint falls short if it pleads facts that are merely "consistent with a defendant's liability" or if the facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 678–79. The allegations must "'show[] that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In its motion to dismiss, Wells Fargo makes two principal arguments: (1) Jones' amended counterclaim must be dismissed for lack of standing; and (2) Jones fails to state a claim for tortious interference with prospective business advantage. (See Mem. of Facts & Law in Supp. of Mot. to Dismiss ("Wells Fargo's Mem.") [DN 30-1].) The Court will address the arguments below.

**Lack of Standing.** Wells Fargo first argues that Jones' amended counterclaim must be dismissed because Jones "fails to establish standing to assert a cause of action . . . for alleged actions involving equipment belonging to CAJM, or subject to a security interest of Murray Bank." (Wells Fargo's Mem. [DN 30-1] 3.) In this respect, Wells Fargo notes that constitutional standing under Article III has three elements. White v. United States, 601 F.3d 545, 551 (6th Cir. 2010). "First, the plaintiff must have suffered an injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, the injury must be fairly traceable to the challenged action of the defendant. Third, it must be likely that the injury will be redressed by a favorable decision." Id.

(internal quotations and citations omitted). Wells Fargo argues that Jones does not have standing because he cannot establish that he has suffered an injury in fact.

According to Wells Fargo, the equipment that it allegedly converted belonged to CAJM, a distinct legal entity, and was subject to a security interest of The Murray Bank. Thus, Jones does not assert any individual or personal interest in the equipment and Jones cannot show that he has suffered an injury in fact. Further, Wells Fargo argues that Jones cannot save his claim by stating that Wells Fargo's alleged actions against CAJM somehow interfered with his individual relationship with The Murray Bank. (See Wells Fargo's Mem. [DN 30-1] 4.) More specifically, Wells Fargo argues that "Jones has not pled facts to show how his relationship with Murray Bank was harmed by actions Wells Fargo is alleged to have taken with regard to CAJM, a distinct legal entity, such that Jones was individually harmed." (Id. at 5.)

Jones responds that he has standing to assert a counterclaim against Wells Fargo because he personally guaranteed the loans that were used to purchase the equipment. (Ans. to Compl. & Countercl. [DN 28] ¶ 5.) According to Jones, he agreed to become personally obligated for the debts, obligations, and liabilities of CAJM—and if "he can be sued based on his interest in that equipment, it stands to reason that he can also pursue an action based on the equipment." (Resp. [DN 33] 3.) In support, Jones cites Loncar v. Western Peak, LLC, in which the court stated that "regardless of any distinctions between treatment of LLCs and corporations for purposes of assessing individual standing, the individual plaintiffs have adequately alleged they were induced to make personal loan guarantees, providing them with standing to sue which is distinct from the LLCs." 2010 WL 965519, at *2 n.2 (D. Colo. Mar. 15, 2010) (citation omitted). In essence, Jones argues that since he personally guaranteed the subject loans, he suffered an injury in fact.

In this case, the parties have understandably characterized this issue as one of Article III standing. The Sixth Circuit has often done so, as it has "conclusively adopted the general rule that a shareholder does not have standing to bring a direct cause of action under federal law when the only damage alleged is the diminution in the value of corporate shares." Gaff v. Fed. Deposit Ins. Corp., 814 F.2d 311, 317 (6th Cir. 1987) (citation omitted).[2] However, the Court finds that the Sixth Circuit's use of the word "standing" actually means that the shareholder lacks the right to bring suit, as opposed to not having a cognizable injury in fact. This is essentially what Wells Fargo argues—namely, that Jones lacks the right to bring suit. The Court agrees with this argument. In Whelan v. Abell, the D.C. Circuit explained the confusion between the theories:

> To be sure, courts have on occasion denied stockholders' suits alleging injury, asserting that the stockholders lacked "standing" to bring such an action because the stockholders, "experiencing no direct harm," possess[ ] no *primary* right to sue." But we do not read these cases as actually turning on the question whether the stockholder has suffered a sufficiently direct injury to establish Article III injury or causation. The courts do not conduct that kind of analysis. It may well be that if a minor injury is suffered by a large corporation it would be difficult to trace a "distinct and palpable injury" to a shareholder, but that would certainly not be so if the damage was to a closely held corporation. Conceptually, then, the problem is not an Article III one.

953 F.2d 663, 671-72 (D.C. Cir. 1992) (internal citations omitted). The real issue in this case is not whether Jones lacks an injury in fact. As the sole member of CAJM, it seems to the Court that Jones would have suffered an injury by Wells Fargo's alleged actions. This injury, however, is derivative of CAJM's injury. The main issue is whether Jones is the proper party "entitled under the governing substantive law to enforce the asserted right." Id. (citation omitted). To determine whether Jones is the proper party to bring this claim, the Court must turn to Fed. R. Civ. P. 17. The issue is not one of Article III standing.

---

[2] Indeed, to the extent that Jones argues he has standing because he is the sole member of CAJM, Wells Fargo's argument seems to have merit, as the only damage alleged appears to be the reduced value of the sold equipment.

Under Fed. R. Civ. P. 17, an action "must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). In this case, the real party in interest is not Jones. It is CAJM, the limited liability company that owned the allegedly converted equipment. As discussed above, CAJM has moved to intervene in this action, and the Court has granted its motion. Thus, the real party in interest is now in the case. Wells Fargo's motion to dismiss Jones' amended counterclaim [DN 30] is **GRANTED**. Jones' amended counterclaim is **DISMISSED** with prejudice. Remaining in the action are the counterclaims of CAJM and The Murray Bank.

The fact that Jones guaranteed the loans that were used to purchase the CAJM equipment does not change this analysis. Indeed, by personally guaranteeing the loans, Jones simply became a creditor of CAJM. He did not suffer any injury distinct from CAJM. As such, he had no right to sue for injuries allegedly inflicted on CAJM. The Seventh Circuit made this clear in Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago, determining that the injury inflicted on a guarantor is more remote than one suffered by a shareholder. The Court explained as follows:

> The participants most directly affected by injury inflicted on the firm are the stockholders—for their investment is first to be wiped out. Creditors come next. Guarantors are contingent creditors. If the firm stiffs a creditor, that creditor can collect from the guarantor; the guarantor succeeds to the original creditor's claim against the firm. We know that creditors cannot recover directly for injury inflicted on a firm, so guarantors as potential creditors likewise cannot recover.

877 F.2d 1333, 1336 (7th Cir. 1989). This Court finds the Seventh Circuit's logic persuasive and determines that a similar conclusion is warranted here. The fact that Jones signed a personal guaranty does not create a unique injury, as "direct *dealing* is not the same as direct *injury*." Id.

**Failure to State a Claim for Tortious Interference with Prospective Advantage.** The Court's decision to dismiss Jones' amended counterclaim is supported on another ground. Jones has failed to state a tortious interference with prospective advantage claim upon which relief can be granted. In Nat'l Collegiate Athletic Association v. Hornung, the Kentucky Supreme Court set

12

forth the principles governing the tort of intentional interference with prospective advantage. In so doing, the Court held that § 776B of the Restatement (Second) of Torts is a fair reflection of Kentucky law. 754 S.W.2d 855, 857 (Ky. 1988). This section states:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
> (b) preventing the other from acquiring or continuing the prospective relation.

Restatement (2d) Torts § 776B. To prove a tortious interference with business expectancy claim, Jones must show that: (1) there was a valid business relationship between him and The Murray Bank; (2) Wells Fargo had knowledge of this relationship; (3) Wells Fargo's intentional act of interference; (4) Wells Fargo's improper motive; (5) causation; and (6) special damages. See Ventas, Inc. v. Health Care Prop. Investors, Inc., 635 F. Supp. 2d 612, 621 (W.D. Ky. 2009).

Here, Jones alleges that he had a valid business relationship with The Murray Bank. (See Ans. to Compl. & Countercl. [DN 28] ¶ 2.) He also alleges that Wells Fargo had knowledge of this relationship—and that Wells Fargo intentionally interfered with the relationship by wrongly taking possession of the CAJM equipment and selling it for substantially less than its fair market value. (Id. ¶¶ 3, 6.) Further, Jones alleges that Wells Fargo acted to gain an improper financial advantage for itself, causing special damages to Jones. (Id. ¶¶ 7, 8.) The Court finds, however, that these allegations are insufficient to survive Wells Fargo's motion to dismiss. As Wells Fargo notes, most of the elements that Jones alleges are by the mere recitation of their existence. Jones makes no attempt to explain the nature or extent of his relationship with The Murray Bank. More importantly, however, Jones has pleaded no facts to show how his relationship with The Murray

Bank was harmed by the actions Wells Fargo is alleged to have taken with regard to CAJM's property. It is not enough to simply allege that special damages were caused to Jones.

The Court rejects Jones' argument that he has sufficiently pleaded facts which show that Wells Fargo's alleged actions hindered Jones in his individual capacity. According to Jones, Wells Fargo's alleged actions hindered his ability to repay the loan that the equipment secured—and harmed his standing and relationship with The Murray Bank. (Resp. [DN 33] 6.) However, there is no allegation in the amended counterclaim indicating that The Murray Bank discontinued its existing relationship with Jones. Likewise, there are no factual allegations in the amended counterclaim explaining how Jones' personal relationship with The Murray Bank was harmed. The only allegation is that Jones personally guaranteed loans that were used to lease the CAJM equipment. (Ans. to Compl. & Countercl. [DN 28] ¶ 5.) This is not sufficient to sustain a tortious interference with prospective advantage claim under Kentucky law. Dismissal of Jones' amended counterclaim is also appropriate on these grounds.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Motion to Intervene by C.A. Jones Management Group, LLC [DN 36] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion to Intervene by The Murray Bank [DN 44] is **GRANTED**.

**FURTHER** that the Motion to Dismiss the Amended Counterclaim of Defendant Charles Jones [DN 30] is **GRANTED**.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

January 21, 2014

cc: counsel of record

14