UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-75-GNS-LLK

WELLS FARGO FINANCIAL LEASING, INC., et al.　　　　　　　　　　　PLAINTIFFS

V.

CHARLES A. JONES, et al.　　　　　　　　　　　　　　　　　　　　DEFENDANTS

C.A. JONES MANAGEMENT GROUP, LLC, and
THE MURRAY BANK　　　　　　　　　　　　　　　　　　INTERVENOR PLAINTIFFS

V.

WELLS FARGO FINANCIAL LEASING, INC. et al.　　　　　　　　　　DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Joe Pat Cohoon's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (DN 77). Intervening Plaintiff C.A. Jones Management Group, LLC ("CAJM") filed a response (DN 85), and the movant has replied (DN 86). This motion is now ripe for adjudication. For the following reasons, the Motion to Dismiss is GRANTED.

**I. SUMMARY OF FACTS AND CLAIMS**

Plaintiff Wells Fargo Financial Leasing, Inc. ("Wells Fargo) filed this action alleging breach of contract by Defendants David Griffin ("Griffin") and Charles Jones ("Jones"). Wells Fargo's claims arise from two Master Lease Agreements ("Master Leases"), and attached the exhibits, schedules, and addenda (collectively referred to as the "Loan Documents"). Under the Master Leases, SE Book Company, LLC ("SE Book") agreed to lease certain computer servers

1

and software from VAR Resources, Inc. ("VAR"). (Compl. Ex. A, DN 1-1). Griffin and Jones both executed personal guaranties on the Master Leases to secure SE Books' obligations to VAR. (Compl. Ex. B, DN 1-2).

VAR subsequently assigned its interest in the Master Leases to Wells Fargo. (Compl. Ex. C, DN 1-3). After SE Book defaulted on the Master Leases, Wells Fargo sent a demand letter to Griffin and Jones demanding payments as required by the personal guaranties.[1] (Comp. Ex. D, DN 1-4).

CAJM then moved to intervene in this action and asserted claims of tortious interference with prospective business advantage and conversion in its Intervening Complaint against Wells Fargo. (Mot. for Leave to File Intervening Compl., DN 36; Intervening Compl. ¶¶ 12-13, DN 49). CAJM subsequently filed an Amended Intervening Complaint asserting claims against additional Defendants including, *inter alia*, Joe Pat Cohoon ("Cohoon"). (Am. Intervening Compl., DN 69). In particular, CAJM alleges that Cohoon tortuously interfered with its business relationship with The Murray Bank, intentionally dispossessed CAJM of its property, and was negligent in permitting others to remove CAJM's equipment from the office space located at 306 Andrus Dr., Murray, Kentucky. (Am. Intervening Compl. ¶¶ 18, 30-33, 41-50, DN 69). In the present motion, Cohoon has moved to dismiss CAJM's claims against him based upon the lack of subject-matter jurisdiction and a failure to state a claim. (Memo. in Support of Mot. to Dismiss, DN 78).

---

[1] Both Griffin and Jones moved to dismiss the claims asserted against them on the personal guaranties. (Mot. to Dismiss, DN 18, 19). This Court concluded that Kentucky law would apply to the guaranties and held that the guaranties were unenforceable under Kentucky law. (Order, DN 31).

## II. STANDARD OF REVIEW

"A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A trial court has wide discretion to allow and review affidavits and other documents to resolve disputed jurisdictional facts. By considering affidavits and other documents, a motion to dismiss is not converted to a summary judgment motion where it does not impact the merits of the plaintiff's claim. *See Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must construe the complaint in the light most favorable to plaintiff[]," accepting all of the plaintiff's allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Under this standard, a plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint falls short if it pleads facts that are merely "consistent with a defendant's liability" or if the facts do not "permit the court to infer more than the mere possibility of misconduct." *Id.* at 678-79. The

allegations must "'show[] that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

This motion hinges upon whether CAJM's claims against Cohoon are precluded by the *Barton* doctrine due to related bankruptcy actions.[2] In *Barton v. Barbour*, 104 U.S. 126 (1881), the U.S. Supreme Court articulated the requirement "that leave of the appointing forum must be obtained by any party wishing to institute an action in a non-appointing forum against a trustee, for acts done in the trustee's authority as an officer of the court." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *In re Baptist Med. Ctr.*, 80 B.R. 637, 643 (Bankr. E.D.N.Y. 1987)). The purpose of this common-law requirement is to "enable[] the Bankruptcy Court to maintain better control over the administration of the estate." *Id.* at 1240.

Following the decision in *Barton*, Congress enacted a limited exception to the *Barton* doctrine, which provides:

> Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

28 U.S.C. § 959(a). As a sister court has noted, this limited exception "is intended to permit actions redressing torts committed in furtherance of the bankrupt's business operations, and is not cast to foster interference '[with] the use, control, maintenance and operation of the bankrupt's property . . . .'" *In re Am. Associated Sys., Inc.*, 373 F. Supp. 977, 979 (E.D. Ky.

---

[2] There are two related bankruptcy actions pending: *In re Blackrock Investments, LLC*, U.S. Bankruptcy Court for the Middle District of Tennessee, Case No. 3:12-bk-10404; and *In re SE Book Company, LLC*, U.S. Bankruptcy Court for the Western District of Kentucky, Case No. 12-bk-50954-thf.

4

1974) (citing *Wheeler v. Inland Gas Corp.*, 307 Ky. 459, 461, 211 S.W.2d 415, 417 (1948); *Price v. Williamson*, 305 S.W.2d 276 (Ky. 1957)). "Merely collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate, do not constitute 'carrying on business' as that term has been judicially interpreted." *DeLorean*, 991 F.2d at 1241 (citation omitted).

In this case, the allegations asserted by CAJM against Cohoon relate to actions taken by him to preserve the assets of the bankruptcy estate and do not relate to the operation of any debtor's business. As reflected in the Amended Intervening Complaint, CAJM alleges that Cohoon changed the locks to the property located at 306 Andrus Drive in Murray, Kentucky, without giving notice to CAJM, and permitted others to remove property belonging to CAJM from the premises. (Am. Intervening Compl. ¶¶ 18-21, DN 69). The declarations filed by the Trustees underscore that the locks were changed to the property at their direction and access to the property was granted by Cohoon as directed by the Trustees. (Little Decl. ¶¶ 2-9, DN 78-2); (Lemeh Decl. ¶¶ 2-10, DN 78-1). Thus, CAJM's allegations do not invoke the statutory exception to the *Barton* doctrine set forth in 28 U.S.C. § 959(a).

In its response to the motion to dismiss, CJAM asserts that Cohoon's actions do not fall under the protection of the *Barton* doctrine because he was not acting as the trustee, a court-appointed officer, or a court-approved officer. (Resp. to Mot. to Dismiss 6-7, DN 85). As one court has noted, however, "[i]t would be a grave mistake to limit the *Barton* doctrine only to cases in which a trustee or his professional is a named party to litigation. . . . In evaluating the limits of the *Barton* doctrine, the Court looks to the purpose and potential effect of the Complaint and the plausibility of the claims it asserts against persons closely associated with the Trustee." *In re Hindu Temple & Cmty. Ctr. of Ga., Inc.*, 502 B.R. 881, 890 (Bankr. N.D. Ga. 2013).

In support of his motion, Cohoon proffered declarations from the Chapter 7 trustees for the bankruptcy estates of Blackrock Investments, LLC and SE Book Company, LLC. One of the Chapter 7 Trustees stated:

> 2. On or about October 7, 2012, I was appointed as the Chapter 7 Trustee for the bankruptcy estate of SE Book Company, LLC ("SEB"), in the United States Bankruptcy Court for the Western District of Kentucky, Case[] No. 12-50954-thf.
> 3. Shortly after my appointment, I toured a building and real property located at 306 Andrus Drive, Murray, Kentucky (the "Blackrock Property") with Charles Jones. This building was owned by Blackrock Investments, LLC.
> 4. Maintained within the Blackrock Property was certain computer equipment leased by SEB ("SEB Computer Equipment").
> 5. In furtherance of my duties as Chapter 7 Trustee for SEB, I immediately took steps to secure the SEB Computer Equipment.
> 6. Around this time, I was introduced to Joe Cohoon.
> 7. I directed Mr. Cohoon to maintain control of and oversight over the SEB Computer Equipment.
> 8. At my direction, Mr. Cohoon restricted access to the SEB Computer Equipment to appropriate individuals, including other bankruptcy trustees for estates, creditors, and authorized vendors who copied data residing on the SEB Computer Equipment in order to preserve evidence and information related to the operations of SEB. At all such times, Mr. Cohoon reported to me regarding access to the SEB Computer Equipment and received my approval before granting access.
> 9. Mr. Cohoon's actions in securing and keeping watch over the SEB Computer Equipment were performed in furtherance of my authority and my obligations as Chapter 7 Trustee to secure all property, assets and collateral subject to security interests of creditors of SE Book Company, LLC.

(Little Decl. ¶¶ 2-9, DN 78-2). The other Trustee similarly stated:

> 2. On or about November 13, 2012, I was appointed as the Chapter 7 Trustee for the bankruptcy estate of Blackrock Investments, LLC ("Blackrock"), in the United States Bankruptcy Court for the Middle District of Tennessee, Case [] No. 3:12-bk-10404.
> 3. Shortly after my appointment, I became aware of Blackrock's ownership of a building and real property located at 306 Andrus Drive, Murray, Kentucky ("the Blackrock Property").
> 4. I immediately took steps to secure the Blackrock Property and all equipment and assets contained inside.
> 5. Around this time, I was introduced to Joe Cohoon.

6

      6.     As I am located in the Nashville area and Mr. Cohoon resided in the Murray, Kentucky area, I requested Mr. Cohoon's assistance in securing the Blackrock Property.

      7.     I directed Mr. Cohoon to change the locks at the Blackrock Property.

      8.     I directed Mr. Cohoon to maintain control of and oversight for the Blackrock Property while an assessment of the assets held therein was performed.

      9.     At my direction, Mr. Cohoon restricted access to appropriate individuals, including other bankruptcy trustees for estates whose property was held at the Blackrock Property, creditors, and ultimately potential buyers of the Blackrock Property.  At all such time, Mr. Cohoon reported to me regarding access to the Blackrock Property and received my approval before granting access.

      10.    Mr. Cohoon's actions in securing and keeping watch over the Blackrock Property were performed in furtherance of my authority and my obligations as Chapter 7 Trustee to secure all property and assets of Blackrock Investments, LLC.

(Lemeh Decl. ¶¶ 2-10, DN 78-1).

As the declarations of both Trustees reflect, Cohoon acted as an agent of the Trustees to assist in furtherance of their duties to collect and preserve the assets of the bankruptcy estate. *See Price v. Deeba*, No. CIV-14-319-D, 2014 WL 4660810, at *8 (W.D. Okla. Sept. 17, 2014) (granting the motion to dismiss based upon the *Barton* doctrine to "the real estate management companies employed by the trustee.").  Because Cohoon was acting as the Trustees' agent in performing duties at the direction of and in furtherance of the Trustees' responsibilities, the claims asserted against Cohoon are essentially claims against the Trustees, and this Court lacks jurisdiction over these claims under the *Barton* doctrine.

Despite CAJM's argument to the contrary, its claims against Cohoon also necessarily relate to the bankruptcy actions pending against in Kentucky and Tennessee.  As the Sixth Circuit has explained:

> [T]he "usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." An action is "related to bankruptcy if the outcome could alter the debtor's rights,

7

> liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." A proceeding "need not necessarily be against the debtor or against the debtor's property" to satisfy the requirements for "related to" jurisdiction. However, "the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section [1334(b)]."

*In re Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir. 1996) (second alteration in original) (internal citations omitted) (citation omitted). *See also Lawrence v. Goldberg*, 573 F.3d 1265, 1270-71 (11th Cir. 2009) (citation omitted). The U.S. Supreme Court has also held that "proceedings 'related to' a bankruptcy proceeding include 'suits between third parties which have an effect on the bankruptcy estate.'" *Id.* at 489 (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n.5 (1995)).

In this case, CAJM's claims against Cohoon necessarily relate to the Trustees' efforts to preserve assets of the bankruptcy estates. CAJM alleges that the property seized by Cohoon was wrongfully seized. As the declarations of the Trustees reflect, however, Cohoon's actions were taken at the behest of the Trustees as part of the Trustees' duties to secure the property and assets comprising the bankruptcy estates. Thus, CAJM's claims against Cohoon are related to the pending bankruptcy actions.

For these reasons, CAJM's claims asserted against Cohoon are precluded by the *Barton* doctrine. Thus, the Court will dismiss all claims asserted against Cohoon by CAJM because this Court lacks jurisdiction to hear those claims.

## IV.  CONCLUSION

For the reasons outlined above, **IT IS HEREBY ORDERED** that Joe Pat Cohoon's Motion to Dismiss (DN 77) is **GRANTED**.

Greg N. Stivers, Judge
United States District Court

March 25, 2015

cc:   counsel of record

9